UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRISTOL WEST INSURANCE
COMPANY,

        Plaintiff,

                                              Case No. 5:04-CV-36

v.                                              Consolidated with:
                                              Case No. 1:05-CV-2

CARL LEE WHITT, and
JERRY OTTO and ANGIE OTTO,               HON. GORDON J. QUIST
as parties interest,

        Defendants.
_____/

## OPINION

In these consolidated cases, Plaintiff in Case No. 5:04-CV-36, Bristol West Insurance

Company ("BWIC"), requests that the Court enter a judgment declaring that, among other things,

BWIC did not breach any duty to Defendant Carl Lee Whitt ("Dr. Whitt") under an automobile

insurance policy in connection with the August 25, 2002, accident between Dr. Whitt's automobile

and a motorcycle ridden by Defendants Jerry Otto and Angie Otto (the "Ottos"). BWIC also seeks

a declaration that it is not bound by a consent judgment entered in a lawsuit in Indiana state court

between the Ottos and Dr. Whitt. In Case No. 1:05-CV-2, the Ottos, Dr. Whitt, and Ronald Mishler

("Mishler" and, together with Dr. Whitt and the Ottos, "Defendants"), the owner of the motorcycle

involved in the August 25, 2002, accident, have filed a complaint for bad faith insurance practices

and for collection of the consent judgment. Now before the Court are the parties' cross motions for

summary judgment. For the reasons set forth below, the Court will deny BWIC's motion and grant

Defendants' motion for summary judgment.

## I. Facts and Procedural Background

**A.     The Policy**

On or about May 27, 2002, BWIC issued automobile insurance policy No. A30-3562197-04

(the "Policy") to Dr. Whitt.  The Policy provides coverage for the period of June 24, 2002, through

December 24, 2002, with limits of $500,000 per occurrence and in the aggregate.  Pursuant to the

Policy, BWIC is obligated to provide coverage as follows:

> Subject to the Limit of Liability shown in the Declarations, if you pay a premium for
> Liability coverage, we will pay damages, other than punitive or exemplary damages,
> for "bodily injury" or "property damage" for which any "insured" becomes legally
> responsible because of an auto accident.  We will settle or defend, as we consider
> appropriate, any claim or suit asking for these damages.  In addition to our limit of
> liability, we will pay all defense costs we incur.  Our duty to settle or defend ends
> when our limit of liability for this coverage has been exhausted through an offer of
> settlement or payment.  We have no duty to defend any suit or settle any claim for
> "bodily injury" or "property damage" not covered under this policy.

(Policy at 4, Part A (Insuring Agreement), Pl.'s Br. Supp. Mot. Ex. B.)  The Policy excludes

coverage for a person's use of "a vehicle without the express or implied permission of [the insured]"

and "[f]or bodily injury or property damage occurring while any vehicle, including [the insured's]

covered auto, is being used in the commission of a felony, including theft of [the insured's] covered

auto . . . ." (Id. at 6, 7, Part A (Exclusions).)  The Policy provides that following an accident, the

insured must satisfy several requirements, including:

> A.     We must be notified promptly of how, when and where the accident or loss
> happened.  Notice should also include the names and addresses of any injured
> persons and of any witnesses.
>
> . . . .
>
> B.     A person seeking any coverage must:

2

> 1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
> 2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

(Id. at 29, Part E (Duties After an Accident or Loss).)  The Policy also addresses the consequences of an insured's fraud and/or misrepresentation in connection with the submission of a claim:

> . . . .
>
> We may deny coverage for an accident or loss if "you" or an "insured" have knowingly or unknowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.
>
> We may void this policy for fraud or misrepresentation after the occurrence of an accident or loss.  This means that we will not be liable for any claims or damages which would otherwise be covered.  However, this shall not affect coverage under Part A of this policy up to the minimum limits required by the financial responsibility law of the State of Michigan if we certify your policy as proof of financial responsibility to the Secretary of State of the State of Michigan, and if the accident occurs before we notify the named insured that the policy is void.  If we void this policy, you must reimburse us if we make a payment.
>
> If we void this policy, it will be void from its inception (void ab initio), and no coverage will be provided whatsoever.

(Id. at 31, Part F (General Provisions).)  Finally, the Policy provides "Out of State Coverage" as follows:

> If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:
>
> A. If the state or province has:
> 1. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.
>
> B. No one will be entitled to duplicate payments for the same elements of loss.

(Id. at 9, Part A (Liability Coverage).)

3

**B.**     **The Accident and Underlying Litigation**

On August 25, 2002, Dr. Whitt's automobile collided with a motorcycle owned by Mishler and ridden by the Ottos.  The accident occurred in Indiana.  Dr. Whitt was driving his vehicle at the time of the accident.  The Ottos both suffered serious injuries and the motorcycle was damaged.  On or about August 28, 2002, Dr. Whitt reported the accident to BWIC.  Dr. Whitt told BWIC that he picked up a hitchhiker, who drugged Dr. Whitt, pushed him out of the vehicle, and caused the accident with the Ottos.  Dr. Whitt subsequently gave a recorded statement to BWIC's representative describing the car-jacking.

On or about September 6, 2002, the prosecutor filed a criminal complaint against Dr. Whitt for leaving the scene of a personal injury accident.  Dr. Whitt retained attorney Robert Love to represent him in the criminal matter, and Dr. Whitt entered a plea of not guilty.  Subsequently, Dr. Whitt pled guilty to a reduced charge of reckless driving.

Shortly after the accident, the Ottos and Mishler retained attorney Neal Lewis to represent them in their claims against Dr. Whitt.  Attorney Lewis notified BWIC of the accident, the potential criminal charges against Dr. Whitt, and his clients' claims against Dr. Whitt.  (Letter from Lewis to Erb of 9/9/02, Pl.'s Br. Supp. Ex. C.)  On or about May 30, 2003, attorney Lewis faxed a draft copy of a complaint against Dr. Whitt to BWIC.  (Campbell Dep. at 26-27, Defs.' App. Ex. Q.)  BWIC apparently did not respond to the draft complaint.  On June 25, 2003, attorney Lewis faxed a copy of summons and complaint captioned <u>Jerry and Angie Otto, et al. v. Carl L. Whitt, M.D.</u>, No. 44C01-0306-CT-11 (the "Indiana Litigation"), which attorney Lewis filed in the LaGrange County Circuit Court that same day.  (<u>Id.</u> at 27-29.)  The complaint alleged, among other things, that Dr. Whitt was operating his vehicle at the time of the accident, that Dr. Whitt was intoxicated, and that Dr. Whitt was negligent.

4

On July 21, 2003, attorney Lewis sent a letter to BWIC confirming that a complaint had been filed against Dr. Whitt and inquiring whether BWIC would be defending or denying coverage for the claim.  (Id. at 36-37.)  BWIC responded to attorney Lewis by letter dated September 5, 2003, in which BWIC stated that it was denying coverage for the claim:

> Dr. Whitt formally maintains that he was neither operating nor a passenger of the vehicle involved in this accident.  He further states that he is a victim of a car-jacking that proceeded [sic] this unfortunate accident.  Therefore, pursuant to Indiana Statute, Dr. Whitt is not responsible for the actions of the car-jacker and is not liable for the resulting injuries based upon the facts as reported, and no coverage under the policy.

> Accordingly, we must respectfully decline coverage for this claim based upon the facts as reported and applied to Indiana law.

(Letter from Erb to Lewis of 9/5/03, Defs.' App. Ex. T.)  The letter was also sent to Dr. Whitt.

In spite of the version of events that Dr. Whitt had maintained since the accident, in late January 2004, Dr. Whitt signed an affidavit in which he acknowledged that he was driving his vehicle at the time of the accident.  Dr. Whitt stated:

> Comes now the Affiant and after having been duly sworn does hereby offer the following Affidavit relative to both the civil and criminal actions related to the August 25, 2002 automobile accident.  After much thought and consideration and after a thorough review of both the direct and circumstantial evidence which has been gathered by the respective participants, I conclude that I was the operator of the vehicle at the time of the accident.

(Whitt Aff., Pl.'s Br. Supp. Ex. E.)  Dr. Whitt or attorney Love provided the affidavit to BWIC on or about January 21, 2004.[1]  (Campbell Dep. at 21; letter from Campbell to Whitt of 5/16/04, Pl.'s Br. Supp. Ex. J.)

---

[1]BWIC claims that it received the affidavit on March 5, 2004, citing the date of March 5, 2004, printed at the top of a faxed copy of the affidavit (Exhibit E).  In light of BWIC's admission in its March 16, 2004, letter that it received Dr. Whitt's affidavit on January 21, 2004, BWIC's reliance on a printed date at the top of a fax without any evidence showing that Dr. Whitt or his attorney faxed the affidavit on March 5, 2004, or that BWIC had not received the affidavit prior to that time fails to refute Defendants' evidence that BWIC knew of the affidavit in January 2004.

On March 16, 2004, after receiving Dr. Whitt's affidavit, BWIC sent a letter to Dr. Whitt again denying coverage for the claim. The letter stated, "[BWIC] expressly reserves all rights of denial under the policy and in no way waives any or its rights, nor any of your rights, duties, obligations, or any condition set forth in [BWIC's] Michigan Personal Auto Policy issued to you." (Letter from Campbell to Whitt of 3/16/04, at 1, Pl.'s Br. Supp. Ex. J.) Although BWIC had received a copy of the summons and complaint filed in the Indiana Litigation in June 2003 and knew about the Indiana Litigation for several months, BWIC stated:

> This will serve to further confirm that neither you or your representative have informed [BWIC] that you were served with a civil complaint, or a civil law suit, pertaining to this matter. If you were served you have failed to immediately provide us with a copy of the complaint as required under the terms and conditions of your policy. **We are requesting that you __IMMEDIATELY__ provide us with all documents relating to this civil matter.**

(Id.) In addition to citing Dr. Whitt's failure to immediately provide a copy of the complaint as a basis for denial of coverage, BWIC also cited Dr. Whitt's misrepresentations regarding the accident and his failure to cooperate as reasons supporting BWIC's denial of coverage.

After Dr. Whitt admitted his involvement in the accident, BWIC did not participate in the defense of or settlement negotiations in the Indiana Litigation, even though attorney Lewis had made several settlement offers to BWIC.

**C.      The Instant Litigation**

BWIC filed its declaratory judgment action in this Court on March 16, 2004. On May 20, 2004, attorney Lewis sent BWIC a letter confirming that BWIC was not interested in participating in the defense of or settlement negotiations in the Indiana Litigation. (Letter from Lewis to Haddock of 5/20/04, Defs.' Br. Ex. U.) BWIC did not respond to the letter. On June 16, 2004, the Ottos, Mishler, Dr. Whitt, and State Farm Insurance Company entered into a Settlement Agreement,

6

Covenant For Limited Execution And Related Matters (the "Settlement Agreement"), which resolved all claims against Dr. Whitt for a total of $1.5 million. The Settlement Agreement also provided that the Ottos and Mishler will first seek payment from the Policy before seeking payment from Dr. Whitt's assets. Dr. Whitt's maximum potential liability under the Settlement Agreement is $183,333.00 if the Ottos and Mishler are not successful in collecting certain sums from BWIC. On July 23, 2004, the Indiana court entered a Consent Judgment based upon the terms of the Settlement Agreement. Defendants apparently first disclosed the existence of the Settlement Agreement and Consent Judgment to BWIC at a Rule 16 conference in this case on July 21, 2004.

The Ottos, Dr. Whitt, and Mishler filed a complaint against BWIC in the LaGrange County Circuit Court in Indiana on October 4, 2004. On or about October 27, 2004, BWIC removed the case to the United States District Court for the Northern District of Indiana. On December 29, 2004, the Indiana federal court entered an order granting the parties' stipulation to transfer the case to this Court for consolidation with BWIC's previously-filed case.

## II. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. <u>Id.</u>

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Agristor Fin. Corp. v. Van Sickle</u>, 967 F.2d 233, 236 (6th Cir. 1992)

(quoting <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III.  <u>Discussion</u>

The two main issues raised by the instant motions are whether BWIC had a duty to defend Dr. Whitt in the Indiana Litigation and, if so, whether the Consent Judgment is enforceable against BWIC.  With regard to the first issue, BWIC contends that there is no coverage for the claim and it had no duty to defend Dr. Whitt in the Indiana Litigation because Dr. Whitt:  (1) committed fraud and/or misrepresented material facts in connection with the presentation of his claim to BWIC; (2) failed to provide BWIC copies of the pleadings and papers in the Indiana Litigation; (3) failed to request that BWIC defend him in the Indiana Litigation; and (4) claimed that he was not operating his vehicle at the time of the accident.  Defendants respond that the allegations of the complaint in the Indiana Litigation were within the scope of the Policy's coverage and that BWIC waived all of its defenses either by failing to assert them in its original denial of coverage letter or by failing to raise them in the Indiana Litigation.  Defendants further assert that BWIC's policy defenses to coverage are without factual basis and BWIC cannot show prejudice.  With regard to the second issue, BWIC argues that it is not liable on the Consent Judgment because it was obtained through collusion and that its maximum exposure is limited to the Policy limits of $500,000.  Defendants argue that they entered into the Consent Judgment following good faith negotiations and that the Consent Judgment is presumptively valid against BWIC for its full amount.

### A.    **Whether BWIC Owed Dr. Whitt A Duty To Defend**

#### 1.    **The Duty To Defend**

The parties agree that Michigan law applies to the determination of BWIC's duty to defend and Dr. Whitt's obligations under the Policy.  Under Michigan law, an insurer has a duty to defend

if the allegations of the underlying complaint arguably fall within the coverage of the policy. See Shefman v. Auto-Owners Ins. Co., 262 Mich. App. 631, 636, 687 N.W.2d 300, 302 (2004) (per curiam) (citing Radenbaugh v. Farm Bureau Gen. Ins. Co. of Mich., 240 Mich. App. 134, 137, 610 N.W.2d 272, 275 (2000)). Because an insurer has a duty to defend when coverage is arguable, it is often said that the duty to defend is broader than the duty to indemnify. See Auto-Owners Ins. Co. v. City of Clare, 446 Mich. 1, 15, 521 N.W.2d 480, 487 (1994); Polkow v. Citizens Ins. Co. of Am., 438 Mich. 174, 180, 476 N.W.2d 382, 384 (1991). In Detroit Edison Co. v. Michigan Mutual Insurance Co., 102 Mich. App. 136, 301 N.W.2d 832 (1980), the court explained the duty to defend as follows:

> The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Dochod v Central Mutual Ins Co*, 81 Mich App 63; 264 NW2d 122 (1978). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. *Shepard Marine Construction Co v Maryland Casualty Co*, 73 Mich App 62, 250 NW2d 541 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. 14 Couch on Insurance 2d, § 51:45, p 538.

Id. at 141-42, 301 N.W.2d at 835.

The complaint in the Indiana Litigation alleged that on August 25, 2002, Dr. Whitt was operating his vehicle when it crossed the center line of U.S. 120 and struck the motorcycle which the Ottos were riding. The complaint further alleged that the Ottos suffered injuries and that Dr. Whitt's negligence or gross negligence was the proximate cause of those injuries. These allegations fall squarely within the Policy's coverage. BWIC does not dispute this point, but it argues that it was

not obligated under the Policy to defend or settle any claim because shortly after the accident, Dr. Whitt informed BWIC that he was the victim of a car-jacking and was not operating the vehicle at the time of the accident. This argument fails because, as noted above, under Michigan law, the allegations of the underlying complaint, not the insured's version of events, frame the insurer's duty to defend. It is irrelevant that Dr. Whitt's version of events may have fallen within a Policy exclusion because it is entirely possible, if not probable, that following a trial a jury would have found, as alleged by the Ottos and Mishler, that Dr. Whitt was in fact operating the vehicle. Therefore, BWIC had a duty to defend Dr. Whitt on the allegations in the Indiana Litigation.

### 2.     BWIC's Defenses

As already mentioned, BWIC contends that it had no duty to defend Dr. Whitt because it has certain policy-based defenses which excuse it from its obligations under the Policy. Defendants contend that BWIC waived its defenses that Dr. Whitt committed fraud or misrepresentation in the presentation of the claim, that Dr. Whitt failed to provide the pleadings and documents from the Indiana Litigation to BWIC, and that Dr. Whitt failed to personally request a defense from BWIC by omitting those defenses from its September 5, 2003, letter denying coverage. As for the defense asserted in the letter – that Dr. Whitt was neither the driver of nor a passenger in the vehicle at the time of the accident – Defendants contend that BWIC waived the defense by failing to participate and raise the defense in the Indiana Litigation.

Michigan law provides that "[a]s a general rule, once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." Lee v. Evergreen Regency Coop. & Mgmt. Sys., Inc., 151 Mich. App. 281, 284, 390 N.W.2d 183, 185 (1986) (per curiam). In Smith v. Grange Mutual Fire Insurance Co. of Michigan, 234 Mich. 119, 208 N.W. 145 (1926), the Michigan Supreme Court observed:

> This court has many times held, and it must be accepted as the settled law of this state, that when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice.

Id. at 122-23, 208 N.W. at 146-47.  Because waiver is an intentional relinquishment of a known right, an insurer will be held to waive a coverage defense if the insurer is aware of the facts supporting the defense.  See S. Macomb Disposal Auth. v. Mich. Mun. Risk Mgmt. Auth., 207 Mich. App. 475, 476, 208 N.W.2d 3, 4 (1994); LeDuff v. Auto Club Ins. Ass'n, 212 Mich. App. 13, 18, 536 N.W.2d 812, 815 (1995).

In its September 5, 2003, letter to attorney Lewis denying coverage for the claim, BWIC indicated that the only basis for denying the claim was that Dr. Whitt had no liability under Indiana law based upon his story that he was the victim of a car-jacking and was neither the operator nor the passenger of the vehicle at the time of the accident.  BWIC did not state that it was reserving the right to assert other defenses, nor did it raise any other defenses.  Furthermore, the evidence in the record shows that BWIC was aware of the facts supporting three defenses it now seeks to assert – fraud and misrepresentation, Dr. Whitt's failure to provide BWIC copies of the legal papers in the Indiana Litigation, and Dr. Whitt's failure to request a defense – at the time it issued the September 5 letter.  For example, Thomas Campbell ("Campbell"), BWIC's corporate representative, testified that prior to the time it issued the September 5 letter, BWIC suspected that Dr. Whitt's version was not true and that as early as October 15, 2002, BWIC was considering voiding the Policy (for fraud) based upon Dr. Whitt's car-jacking story.  (Campbell Dep. at 24-25, 37.)  In addition, Campbell acknowledged that when BWIC sent the September 5 letter, it knew that the only copies of the pleadings that it had received in the Indiana Litigation were furnished by the Ottos' and Mishler's

attorney.  (Id. at 37-38.)  Finally, with regard to the defense of Dr. Whitt's failure to request a defense, BWIC knew that the lawsuit had been pending for over two months but that Dr. Whitt (according to BWIC) had not requested a defense from BWIC.  (Id. at 55.)

While BWIC does not explicitly say so in its brief, BWIC apparently takes the position that the September 5, 2003, letter was not a denial of coverage to Dr. Whitt because the letter was directed to attorney Lewis, the attorney for the Ottos and Mishler.  This argument is without merit, because the letter was copied to Dr. Whitt and stated that there was "no coverage under the policy," and Campbell testified that the letter was a denial of coverage letter that was sent to Dr. Whitt.  (Id. at 37.)  Incidentally, Campbell also testified that the basis for the denial of coverage asserted in the letter "would not trigger the duty to defend."  (Id. at 31.)  Citing Lee v. Evergreen Cooperative & Management Systems, Inc., 151 Mich. App. 281, 390 N.W.2d 183 (1986) (per curiam), BWIC argues that Defendants should be precluded from asserting waiver because to do so would allow Dr. Whitt to broaden the terms of coverage under the Policy.  BWIC's reliance on Lee is misplaced.  The court in Lee was applying the principle that waiver or estoppel should not apply against an insurance company where the result would be that the insurer would be required to pay a loss which was either not covered by the policy or excluded from the policy.  The Lee court refused to allow the plaintiff to assert waiver against the insurer because the policy specifically excluded coverage for property damage, wrongful eviction, and personal injury and the inequality of holding the insurer liable on a risk outside the scope of the policy was not outweighed by the prejudice to the plaintiff.  Id. at 284, 287, 390 N.W.2d at 185, 186.  In contrast, in this case, application of waiver to the defenses BWIC seeks to assert does not broaden coverage, but merely precludes BWIC from asserting grounds for forfeiture of the contract, which expressly provides coverage for the loss.  Accordingly, BWIC has failed to  cite any persuasive reason why waiver should not apply in this case.

Defendants also contend that BWIC waived the remaining defense – that Dr. Whitt was not operating the vehicle – by failing to participate and raise the issue in the Indiana Litigation. Defendants cite the rule that where an insurer has a duty to defend an underlying lawsuit but refuses to do so, it may not raise issues which it might have raised in the underlying litigation. See Morrill v. Gallagher, 370 Mich. 578, 585-86, 122 N.W.2d 687, 690-91 (1963). This rule is "closely akin to the principle behind collateral estoppel." Lee, 151 Mich. App. at 287, 390 N.W.2d at 186. The problem with this argument is that the underlying case was resolved by consent judgment, "where factual issues are neither tried nor conceded." Smit v. State Farm Mut. Auto. Ins. Co., 207 Mich. App. 674, 682, 525 N.W.2d 528, 532 (1994) (noting that the cases included in Lee's first class of cases, in which the insurer denied coverage and then attempted to raise issues that should have been raised in the underlying litigation, did not include consent judgments). Nonetheless, BWIC has failed to present any evidence showing that Dr. Whitt was not operating his vehicle at the time of the accident, and it admits that it knew that Dr. Whitt's car-jacking story was not true.[2] (Campbell Dep. at 21.)

**B.      Whether the Consent Judgment May Be Enforced Against BWIC**

**1.      Enforceability Against BWIC**

Under Michigan law, an insurer has two alternatives when it determines that a claim against its insured is not covered under the policy. The insurer may repudiate liability and refuse to defend, in which case the insurer must accept the risk that its determination of no coverage was incorrect; or the insurer may protect itself by providing a defense under a reservation of rights. Elliott v. Cas. Ass'n of Am., 254 Mich. 282, 286-87, 236 N.W. 782, 783 (1931); see also Kirschner v. Process

---

[2]Because the Court has concluded that BWIC waived its defenses to coverage and, with respect to the defense regarding Dr. Whitt's non-operation of the vehicle, has failed to present evidence supporting such defense, the Court finds it unnecessary to address Defendants' alternative arguments for rejecting BWIC's defenses.

Design Assocs., Inc., 459 Mich. 587, 593-94, 592 N.W.2d 707, 709 (1999) (stating that "once an insurance company has denied coverage to an insured and stated its defenses, the insurance company has waived or is estopped from raising new defenses"). Where an insurer breaches its duty to defend, the insured is released from its obligation to give the insurer an opportunity to contest liability and is free to settle the claim with the third party.[3] Alyas v. Gillard, 180 Mich. App. 154, 160, 446 N.W.2d 610, 613 (1989) (per curiam). In those circumstances, "the insurer is bound by any reasonable settlement entered into in good faith between the insured and the third party." Id. "The insurance carrier will not be permitted to benefit by sitting idly by, knowing of the litigation, and watching its insured become prejudiced." Id. (citing Burgess v. Am. Fid. Fire Ins. Co., 107 Mich. App. 625, 630, 310 N.W.2d 23, 25 (1981)). Thus, the insurer will be bound by the settlement so long as the settlement was reasonable and was entered into in good faith.

Because the Court has determined that BWIC breached its duty to defend Dr. Whitt, Dr. Whitt was entitled to settle the Indiana Litigation with the Ottos and Mishler. Thus, BWIC can avoid the Consent Judgment only if the settlement was unreasonable or the product of bad faith.

Defendants have presented evidence showing that the settlement was both the product of good faith negotiations and reasonable. This evidence demonstrates that the final agreement was reached after back-and-forth discussions between counsel as well as a thorough evaluation of the evidence and potential damages. Attorney Love, Dr. Whitt's counsel, testified that he and attorney Lewis prepared several drafts of the Settlement Agreement and the numbers were the subject of substantial discussion. (Love Dep. at 53, 56, Defs.' App. Ex. R.) Attorney Love also testified that he reviewed the medical records and spoke with attorney Lewis and determined that Jerry Otto's

---

[3]The parties agree that Michigan law governs with respect to whether the Consent Judgment (as opposed to the amount) is enforceable against BWIC.

14

injuries were "pretty significant" and that while Angie Otto's injuries were not as significant as her husband's, she had facial lacerations that would have required future plastic surgery.  (Id. at 38-41.) Based upon his experience in negotiating personal injury settlements, and considering Dr. Whitt's liability for the accident and damages, attorney Love believed that the case had the potential for a jury verdict of "multiple seven figures."  (Id. at 61, 40.)

BWIC argues that it is relieved from the effect of the Consent Judgment by M.C.L.A. § 257.520(f)(6), which provides:

> The insurance carrier shall not be liable on any judgment if it has not had prompt notice of and reasonable opportunity to appear in and defend the action in which such judgment was rendered, or if the judgment has been obtained through collusion between the judgment creditor and the insured.

BWIC argues that it is not liable on the Consent Judgment because it did not receive prompt notice of and a reasonable opportunity to appear in and defend the Indiana Litigation.  This argument is contrary to the evidence in the record, which shows that BWIC received oral and written notice of the Indiana Litigation and possessed a copy of the summons and complaint in that case since the date it was filed, June 25, 2003.  Although BWIC had both prompt notice and an opportunity to defend, it chose not to do so.  BWIC also argues that the Consent Judgment was the product of collusion, apparently because the Settlement Agreement did not contain a provision stating that the agreement could not be discharged in bankruptcy.  (Campbell Dep. at 60.)  The Court rejects this argument, because in light of the evidence of good faith negotiations, the lack of such a provision does not demonstrate collusion.  Moreover, BWIC has failed to cite any evidence that such provisions are routinely included in personal injury settlement agreements.[4]  BWIC also argues that the Settlement

---

[4]Defendants request that the Court take judicial notice of the fact that personal injury settlement agreements commonly do not contain a "non-discharge in bankruptcy" provision.  The Court finds it unnecessary to do so, however, in light of BWIC's failure to show that such provisions are commonplace in personal injury settlement agreements and because there is no reasonable basis to conclude that the absence of such a provision, by itself, shows collusion.

Agreement was the product of collusion because the agreement provides that the judgment is primarily collectible from the Policy and limits the amounts that may be collected from Dr. Whitt's personal assets in the event that the Ottos and Mishler fail to recover certain sums from BWIC. However, Michigan courts have recognized that when an insurer unjustifiably fails to defend its insured, the  insured may enter into a reasonable, good faith settlement of the claim with the injured party and such agreement is binding upon the insurer, see Detroit Edison Co. v. Mich. Mut. Ins. Co., 102 Mich. App. 136, 144-45, 301 N.W.2d 832, 836 (1980), even when the agreement limits the assets of the insured from which the judgment may be satisfied, see Clay v. Am. Cont'l Ins. Co., 209 Mich. App. 644, 648-50, 531 N.W.2d 829, 831-32 (1995) (per curiam).  Thus, a provision limiting collection from the insured's personal assets is entirely permissible.

BWIC also points out that the parties did not submit the Settlement Agreement to BWIC for review prior to signing it.  The evidence shows, however, that BWIC received several requests to engage in settlement negotiations, including a final inquiry from attorney Lewis on May 20, 2004, regarding BWIC's interest in participating in settlement negotiations or defense of the Indiana Litigation.  BWIC concedes that it refused to engage in settlement discussions or defend the case. In light of this fact, there is no reason to believe that BWIC would have proceeded differently had Defendants provided the Settlement Agreement to BWIC.

Finally, BWIC cites this Court's opinion in Century Indemnity Co. v. Aero-Motive Co., 336 F. Supp. 2d 739 (W.D. Mich. 2004), in which this Court held that the insurers were not bound by a settlement agreement, apparently to suggest that there are similarities between the two cases.  The factual distinctions are legion.  In Century Indemnity, the insured was unable to provide the insurance policies at issue, and there were serious questions about whether the insured could demonstrate the existence of the policies in the first instance.  Yet, one insurer agreed to pay a large

percentage of the defense costs and all of the insurers participated in a settlement offer to the claimant based, in part, upon the insured's counsel's assessment of the case.  Without notice to the insurers, the insured subsequently entered into a consent judgment with the claimant in an amount that was twice the claimant's highest demand and roughly ten to twenty times the amount of the insured's attorney's valuation.  This Court held that the insurers were not bound by the consent judgment because the insurers had not breached their duty to defend and because the settlement was neither reasonable nor the product of good faith.  Id. at 746-49.  In contrast, in this case, there was never any question about the policy's existence nor about coverage of the underlying claim or BWIC's duty to defend.  Moreover, unlike the insurers in Century Indemnity, BWIC refused to provide a defense or engage in settlement discussions.  Finally, in this case, BWIC has failed to present any evidence showing that the consent judgment was unreasonable or not the product of good faith.

## 2.    Enforceability of Excess Amount

Having concluded that BWIC is bound by the Consent Judgment under Michigan law, the Court must decide whether the Ottos and Mishler may collect the excess of the Consent Judgment beyond the $500,000 Policy limit.  Michigan and Indiana law both provide that an insured may bring a claim against his insurer for bad faith breach of the duty to settle a claim resulting in a judgment in excess of the policy limits.  Michigan law and Indiana law on an insurer's bad faith refusal to settle differ in at least one material respect.  Under Michigan law, an insurer refusing to settle in bad faith will be held liable for the excess judgment only to the extent that the judgment would actually be collectable from the insured.  See Frankenmuth mut. Ins. Co. v. Keeley, 436 Mich. 372, 375-76, 461 N.W.2d 666, 667 (1990) (on rehearing) (adopting Justice Levin's dissent in the prior decision in the case, 433 Mich. 525, 546, 447 N.W.2d 691, 699 (1989)).  In contrast, the rule in Indiana is that

the insurer is liable for the excess judgement regardless of the insured's financial status.[5]  See Economy Fire & Cas. Co. v. Collins, 643 N.E.2d 382, 386 (Ind. Ct. App. 1995).  Thus, the Court must make a choice of law determination.[6]

It is well established that, in a diversity case such as this one, a federal court must apply the law of the state in which the court sits.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S Ct. 817, 822 (1932).  This rule extends to the forum state's law regarding choice of laws.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941); Davis v. Sears, Roebuck & Co., 873 F.2d 888, 892 (6th Cir. 1989).  However, in suggesting that the Court should apply Michigan's choice of law rules, the parties neglect to consider that the bad faith case was transferred to this Court from the Northern District of Indiana.  Because there was no claim that venue was improper in the Northern District of Indiana (and BWIC waived any improper venue argument by removing the case to the district court), the case must have been transferred pursuant to 28 U.S.C. § 1404(a).  In this  circumstance, this Court must apply the choice of law rules of the transferring court.[7]  See Watkins & Son Pet Supplies v. Iams Co., 254 F.3d 607, 611 (6th Cir. 2001).  Therefore, the Court must apply Indiana choice of law rules.  Because Indiana courts recognize an insurer's bad faith refusal to settle both as a contract claim and a tort claim, see Allstate Ins. Co. v. Axsom, 696

---

[5]Citing State Farm Fire & Casualty Co. v. T.B., 762 N.E.2d 1227 (Ind. 2002), BWIC argues that under Indiana law its liability is limited to the $500,000 Policy limit of liability.  The Court rejects the argument because there is no indication anywhere in that decision that the claimant and/or the insured was asserting a claim for bad faith refusal to settle.  Rather, the case stands for, at most, the unremarkable proposition that an insurer's liability is limited to the policy limits where there is no allegation of bad faith refusal to settle.

[6]The Court notes that BWIC does not deny that its actions in refusing to defend and refusing to engage in settlement negotiations are sufficient to constitute bad faith.

[7]In contrast, when a case is transferred pursuant to 28 U.S.C. § 1406(a) for improper venue, the choice of law rules of the transferee court apply.  See Levy v. Pyramid Co. of Ithaca, 871 F.2d 9, 10 (2d Cir. 1989).

N.E.2d 482, 484 n.1 (Ind. Ct. App. 1998), the Court will analyze the issue under Indiana's choice of law rules for contracts and torts.

Indiana's choice of law rule for contract actions requires a court to apply the law of the forum with "the most intimate contacts to the facts." Hartford Accident & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 291 (Ind. Ct. App. 1998) (citing Dohm & Nelke v. Wilson Foods Corp., 531 N.E.2d 512, 513 (Ind. Ct. App. 1998)). Indiana applies the approach formulated by the Restatement (Second) of Conflict of Laws, which provides that where the parties have not agreed on the applicable law, the court should consider the following factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties. Id. (quoting Restatement (Second) of Conflict of Laws (hereafter "Restatement") § 188 (1971)).

With regard to the place of contracting, "[a]n insurance contract is executed in the state where the application is made, the premium is paid and the policy is delivered." Pennington v. Am. Family Ins. Group, 626 N.E.2d 461, 465 (Ind. Ct. App. 1993) (citing Travelers Ins. Co. v. Eviston, 110 Ind. App. 143, 152, 37 N.E.2d 310, 313 (1941)). Although the record on this point is sparse, it appears from the Policy's declaration page that Dr. Whitt made the application for the Policy through his agent in Michigan and paid the premiums from Michigan and that the policy was delivered to Dr. Whitt in Michigan. While this contact favors Michigan, "[s]tanding alone, the place of contracting is a relatively insignificant contact." Restatement § 188 cmt. e.

There is little evidence regarding the place of negotiation. As noted above, it appears that Dr. Whitt procured the Policy through his agent in Michigan. According to the jurisdictional allegations in BWIC's first amended complaint, BWIC is a Delaware corporation with its principal

place of business in Florida. It appears from the declarations page, however, that the Policy was issued from Ohio. Although this factor is indeterminate, the Restatement notes that "[t]his contact is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone." Id.

In cases involving insurance policies, the place of performance "is the location where the insurance funds will be put to use." Dana Corp., 690 N.E.2d at 293. The location of the accident as well as the underlying personal injury lawsuit was Indiana, where the funds from the Policy would be put to use. Thus, this contact favors the application of Indiana law. However, "'the place of performance can bear little weight in the choice of the applicable law when . . . at the time of contracting it is either uncertain or unknown.'" Id. (quoting Restatement § 188 cmt. e.).

With regard to the location of the subject matter of the contract, Restatement § 193, which pertains to contracts for fire, surety, or casualty insurance, provides that

> the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under to the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement § 193. In addition, "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." Restatement § 193 cmt. b. When an automobile is at issue, courts typically conclude that the risk is located in the state where the automobile was "principally garaged" at the time the insurance policy was issued. See, e.g. Hofle v. Gen. Motors Corp., No. CA2002-06-062, 2002 WL 31859520, at *2 (Ohio Ct. App. Dec. 23, 2002); Eagle Ins. Co. v. Singletary, 279 A.D.2d 56, 59, 717 N.Y.S.2d 350, 353 (2000); Beckler v. State Farm Mut.

Auto. Ins. Co., 195 Ariz. 282, 287, 987 P.2d 768, 773 (1999).  In this case, Dr. Whitt's vehicle was registered in Michigan and Michigan was its principal location.

Based upon the foregoing considerations, the Court concludes that Michigan law applies with respect to any contract claim.  The only contact favoring the application of Indiana law is that the accident occurred there.  On the other hand, Dr. Whitt is a Michigan resident, the Policy is a Michigan insurance policy and was delivered to Dr. Whitt in Michigan, and Dr. Whitt's vehicle was registered and principally garaged in Michigan.  Moreover, courts have generally held that the site of an automobile accident, alone, is insignificant in a choice of law determination.  For example, in American National Fire Insurance Co. v. Farmers Insurance Exchange, 927 P.2d 186 (Utah 1996), the Supreme Court of Utah held that Idaho was the state with the most significant contacts and the fact that the accident occurred in Utah did not outweigh the Idaho contacts, which were that the insurance policy was issued in Idaho to an Idaho resident and covered an automobile that was registered and garaged in Idaho.  The court observed: "Under the most significant relationship test, the location of the accident is not sufficient to outweigh numerous other contacts, particularly when reliance upon the law of the forum state would seriously alter the original bargain and disrupt the expectations of the parties."  Id. at 190-91.  Similarly, in Hartzler v. American Family Mutual Insurance, 881 S.W.2d 653 (Mo. Ct. App. 1994), the court held that the law of Kansas, rather than Missouri, where the accident occurred, should apply to the interpretation of the insurance policy, because the policies were designated as Kansas policies, the insured vehicles were registered and principally garaged in Kansas, and the insureds were residents of Kansas both at the time the policies were issued and at the time of the accident.  See id. at 657; see also Desario v. State Farm Mut. Auto. Ins. Co., No. 96-4070, 1997 WL 651020, at *2 (10th Cir. Oct. 20, 1997) (holding that site of the accident in Utah was insufficient to apply the law of that state where Wyoming was the principal

location of the insured automobile, the policy was negotiated and issued in Wyoming, and the insureds were residents of Wyoming); Hoffle, 2002 WL 31859529, at *2 (holding that the law of Ohio, the place of the accident, did not apply because the rented vehicle was principally garaged in Kentucky and the rental agreement was negotiated and delivered in Kentucky).  Accordingly, under a contract theory, the law of Michigan applies to Dr. Whitt's bad faith claim against BWIC.

Indiana has adopted a two-step choice of law rule for tort claims, which provides as follows:

> If the place of the tort has extensive connection with the legal action, the traditional rule of *lex loci delecti* ("the law of the place of the wrong") applies; however, if the place of the tort bears little connection to the legal action, a court may consider other factors, such as: (1) the place where the conduct causing the injury occurred; (2) the residence or place of business of the parties; and (3) the place where the relationship is centered.

Thomas v. Whiteford Nat'l Lease, 580 N.E.2d 717, 718 (Ind. Ct. App. 1991) (citing Hubbard Mfg. Co. v. Greeson, 515 N.E.2d 1071 (Ind. 1987)).  Initially, then, the Court must determine the place of the tort.  A "tort is said to have been committed in the state where the last event necessary to make an actor liable for the alleged wrong takes place."  Hubbard Mfg. Co., 515 N.E.2d at 1073.

Although the accident occurred in Indiana and the Ottos and Mishler filed their lawsuit against Dr. Whitt in Indiana, the conduct at issue is BWIC's bad faith refusal or failure to settle the case.  BWIC never appeared in the Indiana Litigation on behalf of Dr. Whitt and never engaged in settlement discussions or negotiations.  Thus, the state where the last event necessary to make BWIC liable for the tort of bad faith refusal to settle occurred is Michigan, because both letters denying coverage (September 5, 2003, and March 16, 2004) were sent from BWIC's offices in Michigan.  Even if there were some basis for concluding that the tort occurred in Indiana, this Court would find that the place of the tort "bears little connection" to the bad faith refusal claim for many of the same reasons that Michigan law applies to a contract claim.  That is, Dr. Whitt (who assigned his claim

22

pursuant to the Settlement Agreement) is a Michigan resident, the parties' relationship concerns an automobile registered and located in Michigan, and the Policy under which BWIC failed to settle was a Michigan policy.  The Court thus concludes that Michigan law applies to the extent that Defendants' claim is in tort for bad faith refusal to settle.  As both parties acknowledge, however, Michigan does not recognize a separate tort action for bad faith breach of an insurance contract.  <u>See Kewin v. Mass. Mut. Life Ins. Co.</u>, 409 Mich. 401, 419-21, 295 N.W.2d 50, 55-56 (1980).  Therefore, Defendants' bad faith claim is a contract claim governed by Michigan law.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the Court will deny BWIC's motion for summary judgment and grant Defendants' motion for summary judgment, insofar as Defendants requested an alternate ruling that Michigan law applies to their bad faith claim.  Accordingly, the Court will enter partial summary judgment for Defendants for the Policy limits of $500,000 and set a trial to determine the extent to which the excess balance of the judgment is collectible under Michigan law.

An Order consistent with this Opinion will be entered.

Date: August 25, 2005                          _____/s/ Gordon J. Quist_____
                                               GORDON J. QUIST
                                               UNITED STATES DISTRICT JUDGE